**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| DONALD VAIL, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:13-00277-KD-N |
| | ) | |
| SMARTERFUEL SOUTH, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT AND RECOMMENDATION

In this case, Defendants SmarterFuel South, LLC ("Smarterfuel") and James Killian, alleged to be President of Smarterfuel (*see* Doc. 1, Ex. A., compl., ¶ 22) removed this case from the Circuit Court of Marengo County, Alabama on May 24, 2013 (*see* Doc. 1),[1] and the nineteen plaintiffs filed a motion to remand (Doc. 10) on June 21, 2013. The remand motion has been referred to the undersigned United States Magistrate Judge for entry of a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2. The defendants filed an opposition (Doc. 12) on July 3, 2013, and the plaintiffs filed their reply in support of remand (Doc. 13) on July 12, 2013.

After consideration of the pleadings, and for the reasons explained herein, it is **RECOMMENDED** that the motion to remand (Doc. 10) be **GRANTED** and that this case be **REMANDED** to Marengo County Circuit Court, from whence it came.

---

[1]    Although both defendants attempt to remove this case, which eliminates any unanimity rule concerns, only removal by Killian is potentially timely. Thus, for purposes of the report and recommendation, Killian alone is considered the removing defendant.

# I.    Analysis.[2]

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000); *accord City of Vestavia Hills v. General Fid. Ins. Co.*, 676 F.3d 1310, 1313 n.1 (11th Cir. 2012).   And a federal court may exercise diversity jurisdiction over all civil actions where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states. 28 U.S.C. § 1332(a)(1).   Nevertheless, "[b]ecause removal jurisdiction raises significant federalism concerns, federal courts are directed to construe removal statutes strictly . . . . Indeed, all doubts about jurisdiction should be resolved in favor of remand to state court."   *University of S. Ala. v. American Tobacco Co.*, 168 F.3d 405, 411; *cf. D.M.C. Enters. Inc. v. Best McAllister, LLC*, Civil Action No. 10-00153-CB-N, 2010 WL 3039477, at *2 (S.D. Ala. Aug. 4, 2010) ("Because it is conferred by statute, the right of removal is strictly construed to limit federal jurisdiction." (citing *Diaz v. Sheppard*, 85 F.3d 1502, 1505 (11th Cir. 1996))); *White v. Wells Fargo Home Mortgage*, Civil Action No. 1:11–cv–408–MHT, 2011 WL 3666613, at *3 (M.D. Ala. Aug. 22, 2011) (a federal court is "obligat[ed] to narrowly construe removal statutes"; this obligation necessarily "requires that uncertainties be 'resolved in favor of remand'" (quoting *Burns v. Windsor Ins. Co.*, 31 F.3d 1092,

---

[2]      The necessary factual information is set out in the undersigned's analysis.

1095 (11th Cir. 1994))).

Therefore, a removing defendant must establish the propriety of removal under § 1441 and, for that reason, "bears the burden of establishing the existence of federal jurisdiction[,]" *Brown v. Kabco Builders, Inc.*, Civil Action 07-0099-WS-C, 2007 WL 841690, at *1 (S.D. Ala. Mar. 15, 2007) (citing *Leonard v. Enterprise Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002)),[3] which requires that a removing defendant both establish complete diversity—that all plaintiffs are diverse from all defendants, *see Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998); *accord Rolling Greens, MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam)—and show that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement, *see Fitzgerald v. Besam Automated Entrance Sys.*, 282 F. Supp. 2d 1309, 1314 (S.D. Ala. 2003).

Here, although all the plaintiffs are Alabama citizens (*see* Doc. 1, Ex. A., compl., ¶¶ 1-19) and the complaint alleges that Defendant Killian is also an Alabama citizen (*see id.*, ¶ 22), Killian has provided uncontroverted evidence that his domicile is New York. (Doc. 10, Ex. D, Killian Aff., ¶ 2 ("I reside at 15 Park Avenue, Poughkeepsie, New York 12603. I have lived at this address for the past 23 years. I have never been a resident or citizen of the State of Alabama.").)[4]

---

[3]      *Compare Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) ("Because this case was originally filed in state court and removed to federal court by [the Defendant], [the Defendant] bears the burden of proving that federal jurisdiction exists."), *with Ray v. Bird & Son & Asset Realization Co.*, 519 F.2d 1081, 1082 (5th Cir. 1975) ("The burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction, and if jurisdiction is properly challenged, that party also bears the burden of proof.")).

[4]      "[A]bsent any contradictory evidence, [a party's] place of residence is [his]

Defendant Smarterfuel, a Pennsylvania limited liability company (*see* Doc. 1-2), with its principal place of business there (*see* Doc. 1, ¶ 2), has, moreover, provided sufficient evidence to establish the citizenship of its sole member,[5] SmarterFuel, Inc., a Pennsylvania corporation with its principal place of business there.  (Doc. 5, Ex. A.)  Thus, it appears complete diversity is not contested.  What is contested, however, is whether this matter was timely removed to federal court, and, if so, whether the requisite showing as to amount in controversy has been made.  Because, at least in this Circuit, ***when*** a case is removed—that is, which provision of 28 U.S.C. § 1446(b) ((b)(1) or (b)(3)) a removing defendant invokes—determines the burden of proof as to amount in controversy,[6] the undersigned will address

---

'domicile.'  For purposes of diversity, a party's 'domicile' is the equivalent of his 'citizenship.'"  *Fuller v. Home Depot Servs., LLC*, Civil Action No. 1:07-CV-1268-RLV, 2007 WL 2345257, at *3 (N.D. Ga. Aug. 14, 2007) (citing *McCormick v. Aderhot*, 293 F.3d 1254, 1257-58 (11th Cir. 2002)); *accord Travaglio v. American Exp. Co.*, --- F.3d ----, 2013 WL 4406389, at *3 (11th Cir. Aug. 19, 2013) ("[D]omicile[, which] requires both residence in a state and 'an intention to remain there indefinitely[,] . . . 'is equivalent to [citizenship] for purposes of diversity jurisdiction.'" (quoting *McCormick*, 293 F.3d at 1258, 1257)).

[5]     For purposes of assessing diversity of citizenship, "a limited liability company is a citizen of any state of which a member of the company is a citizen."  *Rolling Greens, MHP*, 374 F.3d at 1022–23.

[6]     Congress, through § 1446(b), has established a "bifurcated removal approach," *Lee v. Lilly Trucking of Va., Inc.*, No. 2:12–cv–74–MEF, 2012 WL 960989, at *1 (M.D. Ala. Mar. 21, 2012), under which

> a state court defendant may remove a case to federal court ***at two procedurally distinct moments in time***.  First, if it is facially apparent from the initial pleading that subject matter jurisdiction exists, § 1446(b)(1) provides the procedure for removal.  *See, e.g., Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010); *Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001).  Such a removal must be accomplished "within 30 days after the receipt by the defendant . . . of a copy of the initial pleading setting forth the claim for relief upon which such action is based . . . ."  § 1446(b)(1).  However, "[i]f the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by

timeliness first.

### A.   Killian's removal of this action is timely under 28 U.S.C. § 1446(b).

It is not contested that Smarterfuel was served with the summons and complaint on September 17, 2012.  (*See* Doc. 1, ¶ 2; *id.*, Ex. C (certified mail receipt).)[7]  Thus, under § 1446(b)(1), September 17, 2012 started the 30-day clock for Smarterfuel to remove this case.  That section provides, in part, that "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is

---

the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . ." § 1446(b)(3); *see also Lowery v. Ala. Power Co.*, 483 F.3d 1184 (11th Cir. 2007).

*Id.* (emphasis added).  "The showing required [as to amount in controversy] turns on the particular provision relied upon as the basis for the removal[.]"  *Rola v. Wal–Mart Stores, Inc.*, No. 6:11–cv–468–Orl–28DAB, 2011 WL 3156672, at *5 (M.D. Fla. June 29, 2011) (citing *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 & n.4 (11th Cir. 2010)), *report and recommendation adopted*, 2011 WL 3111965 (M.D. Fla. July 26, 2011).  Indeed, "the first paragraph of § 1446(b) provides a much wider entry into federal court than does the second paragraph of that section."  *Wilson v. Chester Bross Constr. Co.*, No. CA 11–0020–KD–C, 2011 WL 1380052, at *12 (S.D. Ala. Apr. 12, 2011) (DuBose, J.) (citing *Pretka*, 608 F.3d at 760).

[7]     Alabama's rules regarding service controlled prior to the removal of this case.  *See* FED. R. CIV. P. 81(c)(1) ("These rules apply to a civil action after it is removed from a state court."); FED. R. CIV. P. 4, practice commentary (pre-removal, "service in the state court action will of course have followed state law"); *see also Racquet Club Apartments at Bonaventure 4 S. Condo. Ass'n v. U.S. Sec'y of Hous. & Urban Dev.*, No. 12–60459–Civ–SCOLA, 2012 WL 3244656, at *3 (S.D. Fla. Aug. 9, 2012) (collecting cases).  And under those rules, "[s]ervice by certified mail [is] deemed complete and the time for answering [ ] run[s] from the date of delivery to the named addressee or the addressee's agent as evidenced by the signature on the return receipt." ALA. R. CIV. P. 4(i)(2)(C).

based . . . ." 28 U.S.C. § 1446(b)(1). This "time-window . . . 'is triggered by [1] **simultaneous** service of the summons and complaint, or [2] **receipt of the complaint**, 'through service or otherwise,' **after and apart from service of the summons, <u>but not by mere receipt</u> of the complaint <u>unattended by any formal service</u>**.'" *Bailey v. Janssen Pharmaceutica, Inc.*, 536 F.3d 1202, 1205 (11th Cir. 2008) (quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (emphasis added)). "[S]ervice of process [is] 'fundamental to any procedural imposition on a named defendant[,]'" *Hawkins v. Cottrell, Inc.*, 785 F. Supp. 2d 1361, 1370 (N.D. Ga. 2011) (quoting *Murphy Bros.*, 526 U.S. at 350); it is, moreover, "the official trigger for responsive action by an individual or entity named defendant," *Murphy Bros.*, 526 U.S. at 353; *see also id.* at 347 ("We read Congress' provisions for removal in light of a bedrock principle: An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process.").[8] Of course, where "the summons and complaint are served upon the defendant together, *Murphy Brothers* instructs that 'the 30–day period for removal runs at once.'" *Racquet Club Apartments at Bonaventure 4 S. Condo. Ass'n v. U.S. Sec'y of Hous. & Urban Dev.*,

---

[8]     As explained by the court in *Hawkins*,

The plaintiff in *Murphy Brothers* had faxed a courtesy copy of the complaint to the defendant 14 days before service of process was effected. The defendant removed the action 30 days after service, but 44 days after receiving the faxed copy of the complaint. The Supreme Court held that the removal was timely, because the time to remove did not begin to run until plaintiff had both been served with process and received a copy of the complaint.

785 F. Supp. 2d at 1370 (citing 526 U.S. at 348).

No. 12–60459–Civ–SCOLA, 2012 WL 3244656, at *4 (S.D. Fla. Aug. 9, 2012) (quoting 526 U.S. at 354).[9]

And in multi-defendant litigation the Eleventh Circuit interprets "§ 1446(b) to permit each defendant thirty days in which to seek removal." *Bailey*, 536 F.3d at 1205; *see also id.* at 1205 n.4 ("[T]he statute should be read to permit each defendant, whether first or last served or somewhere in between, thirty days within which to file a notice of removal upon receipt of service."). Here, Defendant Killian asserts that he was never served prior to the removal from state court; some discussion of the plaintiffs' efforts at service will be helpful to the Court's analysis:

- After the plaintiffs' complaint was filed on September 13, 2012 (*see* Doc. 1, Ex. A.), they notified the state court, on October 31, 2012, "that Defendant Jim Killian was served via the Marengo County Sheriff's Department" on October 11, 2012 (Doc. 1, Ex. B).

- On March 11, 2013, Killian moved to quash that service of process (*see generally* Doc. 1, Ex. C), asserting that he was notified by his counsel "that the [state] court file . . . indicates that [he] was served with the Complaint . . . by the Marengo County Sheriff's Department on October 11, 2012. On Thursday, October 11, 2012, I was not in the State of Alabama. On that date, as well as most of that week, I was in

---

[9]    "Section 1446(b)(1) [also] makes clear that the removal period is triggered by receipt, not by service." *DerMargosian v. Arpin Am. Moving Sys., LLC*, Civil Action No. 3:12–CV–4687–D, 2013 WL 787091, at *1 (N.D. Tex. Mar. 4, 2013) (citing, *inter alia*, *Air Starter Components, Inc. v. Molina*, 442 F. Supp. 2d 374, 377 (S.D. Tex. 2006) ("[T]he thirty-day removal clock begins to run when a defendant receives a pleading, motion, or other paper that reveals on its face a basis for federal jurisdiction.") (citing, in turn, *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 164 (5th Cir. 1992)); *accord Bramlett v. Bajric*, Civil Action File No. 1:12–CV–2148–TWT, 2012 WL 4329242, at *2 (N.D. Ga. Sept. 19, 2012) ("To successfully remove an action, the defendant must file its notice of removal within thirty days after the defendant receives the complaint or summons."); *see, e.g.*, *3925 Alameda Prop. LLC v. Brainerd*, No. C–12–4924 EMC, 2012 WL 5199170, at *2 (N.D. Cal. Oct. 22, 2012) ("Here, Alameda has provided **evidence** that Ms. Brainerd **was served with the complaint on** June 14, 2012. *See* Hoffman Decl., Ex. 2 (proof of service). Ms. Brainerd, however, did not file her notice of removal until some three months later.") (emphasis added).

or around Indianola, Mississippi." (Doc. 10, Ex. D., Killian Aff., ¶ 4.)

- On May 8, 2013, the plaintiffs filed an affidavit of service (completed by a deputy with the Dutches County Sherriff's Office, in Poughkeepsie, New York) in state court. (Doc. 1, Ex. D.) The affidavit documents four attempts (on April 17, 18, 19, and 24) to serve Killian at his Poughkeepsie address and indicates that, on the fourth attempt at personal service on April 24, a copy of the summons and complaint were affixed to the door of his dwelling and a copy of both were mailed to Killian on April 25. (*See id.*)

- As stated above, this case was removed on May 24, 2013, which is thirty days from the Dutches County Deputy Sherriff affixing the summons and complaint to Killian's Poughkeepsie address.

In the remand motion, the plaintiffs do not argue that service on October 11, 2012 started § 1446(b)(1)'s thirty-day clock.[10]  Instead, they argue, "[t]he 30-day time limitation on removal began, at the very least, on March 11, 2013, when Counsel for all Defendants in this action" filed the abovementioned motion to quash that service.  (Doc. 10 at 5; *see id.* at 9 ("Killian admits via affidavit that he had notice of the complaint and alleged service on him after discussions with his attorney on March 10, 2013, the date the affidavit was executed. . . . Thus, Defense Counsel should have 'intelligently ascertained' that the 30-day time period was triggered as a result of the filing of the Motion to Quash Service of Process." (citing *Holloway v. Morrow*, Civil Action 07-0839-WS-M, 2008 WL 401305, at *3 (S.D. Ala. Feb. 11, 2008) ("As construed by district courts in this Circuit, the 30-day removal period prescribed by § 1446(b) commences running as soon as a defendant is able to

---

[10]      In fact, the plaintiffs never argue (much less prove) that service of process as to Killian was proper prior to his removal of this action.  *Cf. Ex parte Volkswagenwerk Aktiengesellschaft*, 443 So. 2d 880, 884 (Ala. 1983) (When "the service of process on the defendant is contested as being improper or invalid, the burden of proof is on the plaintiff to prove that service of process was performed correctly and legally."); *accord Cain v. Cain*, 892 So. 2d 952, 956 (Ala. Civ. App. 2004).

ascertain intelligently that the action is removable.")))).)

The plaintiffs argue that Killian is relying on the April 24, 2013 defective service of process "as the 'other paper' that triggered the 30-day time limit" and contend that this is improper because "the Defendants cannot differentiate between James Killian's notice of this litigation on March 10, 2013, when he submitted his Motion to Quash Service of Process, and April 24, 2013, when he filed his Notice of Removal alleging diversity jurisdiction and defective service." (Doc. 13 at 4; *see also* Doc. 10 at 4, 5, 10.) But Killian correctly asserts in response that in the two Northern District of Alabama cases the plaintiffs rely on—*Brizendine v. Continental Casualty Co.*, 773 F. Supp. 313 (N.D. Ala. 1991) and *Lowengart v. Cephus Capital Management, LLC*, 677 F. Supp. 2d 1280 (N.D. Ala. 2009)—and in *Holloway*, the defendant was not actively contesting the propriety of service in the state court. (*See* Doc. 12 at 5-10).[11]   On reply, the plaintiffs latch onto Judge Steele's "intelligently ascertain" language from *Holloway* and argue, "[a]pparently, the Defendants are arguing that without proper service of the Summons and Complaint, the Defendants and their Counsel could not intelligently ascertain the

---

[11]     *See Brizendine*, 773 F. Supp. at 315 ("This **record clearly shows that the defendant** Continental Casualty Company **was served with summons and** copy of the original state court **complaint** in this civil action. The defendant insurer's own pleadings attest to such service of process."); *Lowengart*, 677 F. Supp. 2d at 1282-83 ("The **absence** of a **personal challenge by Sandy of service** precludes any post-removal challenge of service, whether by Sandy or by the removing defendants.  The absence of Sandy's timely joinder in, or formal consent to, the removal constitutes a fatal defect under § 1446."); *Holloway*, 2008 WL 401305, at *2 (The plaintiff moved to remand because "Wal-Mart violated § 1446(b) by tarrying nine months **after service of the Complaint** before effecting removal.  However, Wal-Mart's position is that plaintiff's discovery responses of November 5, 2007 furnish the requisite 'other paper' enabling removal, and that removal was perfected within 30 days after Wal-Mart's receipt of said 'other paper,' such that the time constraints of § 1446(b) have been satisfied.") (emphases added).

9

action was removable." (Doc. 13 at 1-2.)

To begin, the plaintiffs' "intelligently ascertain" argument is misplaced because *Holloway* was a second-paragraph "other paper" removal, made ***after service*** of the summons and complaint, *see* 2008 WL 401305, at *2, and more importantly, their argument contradicts the holding in *Murphy Brothers* that "mere receipt of the complaint unattended by any formal service" is insufficient to "trigger [ ] responsive action[, such as removal,] by [a] named defendant." 526 U.S. at 347-48, 353. Consequently, the result in *IMCO USA, Inc. v. Title Insurance Co. of Minnesota*, 729 F. Supp. 1322 (M.D. Fla. 1990), that "[t]echnicalities of state law as to the completion of service of process [should be] ignored, just as state law generally is disregarded when removal is considered"—which plaintiffs' rely on in reply (*see* Doc. 13 at 2-3)—would probably be different in a post-*Murphy Brothers* world. *Compare, e.g., Prewitt Enterprises, Inc. v. Organization of Petroleum Exporting Countries*, 224 F.R.D. 497, 500 (N.D. Ala. 2002) ("The Supreme Court in *Murphy Brothers* recently emphasized the important role that formal service of process plays in the attainment of due process. . . . So significant is the formality of notice, the Court held that a party's time to remove a case cannot be triggered even by actual notice when there has not been proper service of official process." (analyzing 526 U.S. at 347)), *with Martin v. Mentor Corp.*, 142 F. Supp. 2d 1346, 1349 (M.D. Fla. 2001) (reliance on "formality associated with service of process and of receipt of the complaint" established by *Murphy Brothers* is misplaced where a "case involves notice under 28 U.S.C. § 1446(b) ***subsequent to formal service of***

*process and receipt of the complaint*.  Once the Defendant is properly before the court, as here, and discovers grounds for removal, Defendant must remove within thirty days of discovering those grounds, regardless of whether such information is contained in properly served amended pleadings or from some other source.  The statute does not require formal service, but notice must be in writing.  Defendant Mentor's receipt of Plaintiff's facsimile satisfied the required written notice when it was received on December 11, 2000." (internal citations and quotation marks omitted and emphasis added)).

Thus, because this case was removed by Killian based on the plaintiffs' initial pleading prior to proper service of that pleading on him, his removal is timely under 28 U.S.C. § 1446(b)(1); simply put, the applicable thirty-day window for removal never started to run as to Killian.[12]  *See, e.g., Owens v. Hamlin*, Civil Action No. 13–

---

[12]    Because he was not properly served in state court does not mean, however, that Killian was powerless to remove this case.  *See NXIVM Corp. v. Ross*, No. 09–CV–338S, 2009 WL 1765240, at *3 (W.D.N.Y. June 22, 2009) ("Plaintiff first argues that Defendants prematurely removed this action because none of the Defendants had been formally served with the Summons or Complaint prior to, or at the time, they removed this case.  Because Defendants have not yet been served, Plaintiff argues they are not parties to this action, and therefore, could not remove the case. In support, Plaintiff cites *Murphy Bros.*  . . . Contrary to Plaintiff's contention, there is no statutory requirement that Defendants be formally served with the Summons or Complaint prior to removal. . . .  Here, Defendants received a copy of the initial pleading, the Complaint, after Plaintiff commenced this action in state court, yet prior to Plaintiff formally serving it upon them.  And after evaluating the Complaint's allegations, Defendants filed their notice of removal.  Plaintiff's reliance on *Murphy Bros.*, is misplaced.  As Defendants correctly point out, the issue in *Murphy Bros.*, was whether the defendant waited too long to file its notice of removal. . . . The Court never discussed the defendant's options prior to formal service, nor did it determine that a removal would be premature if it was filed prior to formal service.  Plaintiff offers no other authority for its argument that a defendant, armed with a copy of the Complaint from which it can intelligently ascertain the basis for removal, is prohibited from removing an action prior to Plaintiff's formal service of process." (internal citation omitted)).

00259–KD–N, 2013 WL 3732888, at *4 (S.D. Ala. July 15, 2013) ("Because Owens has not shown that service of process as to FP was performed correctly and legally under the then-applicable Alabama rules of civil procedure, FP's 30–day statutory 'time-window' for removal, under § 1446(b)(1), never began to run.  As such, FP's removal to this Court on May 8, 2013 was not untimely.")  Further, contrary to the plaintiffs' argument otherwise (*see* Doc. 10 at 4, 5, 10; Doc. 13 at 4), this is simply not an "other paper" removal under § 1446(b)(3).   Despite the initial pleading's allegation that he was a citizen of Alabama, Killian knew otherwise, and, based on that knowledge, he was able to review the initial pleading and assess that this action was removable.  *See, e.g., Moore v. Allstate Indem. Co.*, Civil Action No. 06–0412–WS–B, 2006 WL 2730743, at *4 (S.D. Ala. Sept. 22, 2006) ("defendants were not required to remove based solely on the complaint unless ***they could have intelligently ascertained*** that the action was removable before receiving the plaintiff's discovery response" (citation omitted and emphasis added)) (cited in *Holloway*, 2008 WL 401305, at *3); *cf. NXIVM Corp. v. Ross*, No. 09–CV–338S, 2009 WL 1765240, at *3 (W.D.N.Y. June 22, 2009) ("Plaintiff offers no other authority for its argument that a defendant, armed with a copy of the Complaint from which ***it can intelligently ascertain*** the basis for removal, is prohibited from removing an action prior to Plaintiff's formal service of process." (emphasis added)).

> **B.     Taking into consideration judicial experience and common sense, Killian has not proven by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement as to one plaintiff's claim or, moreover, the aggregated claims of plaintiffs owning the same parcel of land.**

"When, as here, damages are not specified in the state court complaint, a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement." *Pate v. State Farm Mut. Auto. Ins. Co.*, No. 3:10cv223/MCR/EMT, 2010 WL 3372195, at *1 (N.D. Fla. Aug. 25, 2010) (citations and internal quotation marks omitted); *see Fitzgerald*, 282 F. Supp. 2d at 1314 ("When the state court complaint is indeterminate, then an intermediate burden[—preponderance of the evidence—]is placed upon the removing defendant since there is no representation by plaintiff's counsel that would be entitled to deference.") (citing *Tapscott*, 77 F.3d at 1356-57). And because Killian removed this case under the first paragraph of § 1446(b), the Eleventh Circuit's decision in *Roe v. Michelin North America, Inc.*, 613 F.3d 1058 (11th Cir. 2010), guides the Court's analysis. *See id.* at 1062 (characterizing that case as a "§ 1446(b) first-paragraph case[ ] in which the plaintiff does not make a specific damages demand"). In *Roe*, the Eleventh Circuit instructed:

> If a defendant alleges that removability is apparent from the face of the complaint, the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden. In making this determination, the district court is not bound by the plaintiff's representations regarding its claim, nor must it assume that the plaintiff is in the best position to evaluate the amount of damages sought. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 771 (11th Cir. 2010). Indeed, in some cases, the defendant or the court itself may be better-situated to accurately assess the amount in controversy. *See id.* (explaining that "sometimes the defendant's evidence on the value of the claims will be even better than the plaintiff's evidence," and that a court may use its judgment to determine "which party has better access to the relevant information.").
>
> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a

case is removable. *See id.* at 754. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint . . . establishes the jurisdictional amount." *See id.* at 770 (quoting *Roe v. Michelin N. Am., Inc.*, 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009)); *see also Williams v. Best Buy Co., Inc.*, 269 F.3d 1316, 1319 (11th Cir. 2001) (allowing district courts to consider whether it is "facially apparent" from a complaint that the amount in controversy is met). Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

613 F.3d at 1061-62 (some internal citations modified).[13] Thus, at least in the context of a Section 1446(b) first-paragraph removal case in which a plaintiff does not make a specific damages demand—such as this one—a district court should employ "its judicial experience or common sense in discerning whether the allegations in a complaint facially establish the jurisdictionally required amount in controversy." *Roe*, 613 F.3d at 1063. But that is not an invitation to speculate as to whether the requisite amount in controversy is facially apparent.

Killian's burden—and the Court's analysis—as to amount in controversy is further informed by the fact this case involves 19 plaintiffs and 16 different parcels of land.

---

[13]     The Eleventh Circuit further stated that the approach announced in *Roe* "is consistent with those of other circuits," *id.* at 1062, specifically citing, *inter alia*, two Fifth Circuit cases—*Luckett v. Delta Airlines, Inc.*, 171 F.3d 295 (5th Cir. 1999), and *Gebbia v. Wal-Mart Stores, Inc.*, 233 F.3d 880 (5th Cir. 2000). *See* 613 F.3d at 1062-63. *Luckett* and *Gebbia* both demonstrate that "the Fifth Circuit has repeatedly acknowledged the power of district court judges to appraise the worth of plaintiffs' claims based on the nature of the allegations stated in their complaints." *Id.* at 1063; *see Luckett*, 171 F.3d at 298; *Gebbia*, 233 F.3d at 833; *cf. Purdiman v. Organon Pharms. USA, Inc.*, Civil Action No. 2:08-CV-0006-RWS, 2008 WL 686996, at *2 (N.D. Ga. Mar. 12, 2008) (pre-*Roe*) (citing both *Luckett* and *Gebbia*, and holding that "[a]lthough the Complaint excludes any reference to the amount of damages Plaintiff has sustained as a result of Defendant's allegedly tortious conduct, after full review and consideration, the Court concludes that is it apparent from the **factual allegations** in the Complaint that the amount in controversy in this action exceeds $75,000" (emphasis added)).

> Generally, to satisfy the amount-in-controversy requirement at least one plaintiff's claim must independently meet the amount-in-controversy specification. *See Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1198 n.31 (11th Cir. 2007) (citing *Exxon Mobil v. Allapattah Svcs., Inc.*, 545 U.S. 546 (2005) for the proposition that if the claims of a single plaintiff meet the jurisdictional threshold the court may assert supplemental jurisdiction over additional plaintiffs' claims). Alternatively, while courts have generally refused to permit the claims of multiple plaintiffs to "be aggregated in order to satisfy the jurisdictional amount requirement," aggregation of claims by multiple plaintiffs against a single defendant is permitted where two or more plaintiffs unite to enforce a single title or right in which the plaintiffs have a common undivided interest. *See Snyder v. Harris*, 394 U.S. 332, 335 (1969); *Hall v. ITT Fin. Svcs.*, 891 F. Supp. 580, 582 (M.D. Ala. 1994) ("Multiple plaintiffs may aggregate their claims only if they seek to enforce a single title or right in which they have a common and undivided interest.").

> Therefore, the Court must determine whether [Killian] has shown by a preponderance of the evidence either (1) that at least one Plaintiff's claim independently meets the amount-in-controversy specification, or (2) that the Plaintiffs' claims may be lawfully aggregated to satisfy the amount-in-controversy specification. If [Killian] cannot carry this burden, then the Court must grant the Plaintiffs' motion to remand.

*Jackson v. Litton Loan Servicing, LP*, No. 3:09–cv–1165–MEF, 2010 WL 3168117, at *6 (M.D. Ala., Aug. 10, 2010) (initial internal citation modified); *see also Hill v. FedEx Ground Package Sys., Inc.*, Civil Action No. 09–0456–WS–C, 2009 WL 2365187, at *1 (S.D. Ala. July 28, 2009) ("The rule[ ] is that '[w]e do not aggregate the value of multiple plaintiffs' claims to satisfy the amount in controversy requirement simply because they are joined in a single lawsuit,' but only when the plaintiffs "'unite to enforce a single claim or right, in which they have a common and undivided interest.'"" (quoting *Leonard*, 279 F.3d at 974 (quoting, in turn, *Zahn v. International Paper Co.*, 414 U.S. 291, 294 (1973)))); *Kirkland v. Midland Mortgage Co.*, 243 F.3d 1277, 1280 (11th Cir. 2001) (aggregation requires "a unified,

indivisible interest in some common fund"); *accord Andrews v. Medical Excess, LLC*, 863 F. Supp. 2d 1137, 1139 (M.D. Ala. 2012) (noting same but also that "multiple claims by one plaintiff can be aggregated in determining the amount in controversy").[14]

Because this case was removed under the first paragraph of § 1446(b), *Lowery* does not control the removal inquiry. But that decision nevertheless informs the Court's analysis because of the evidence Killian presents to make his showing as to amount in controversy. In his notice of removal he points to three pre-*Lowery* decisions—in all three, unlike this case, the plaintiff(s) failed to challenge the contention that the amount in controversy was met—for the proposition that "[a] defendant may properly discharge its burden [to prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement] by pointing to verdicts exceeding $75,000 rendered in similar cases." (Doc. 1 at 7 (citing *Kirkland v. SSL Americas, Inc.*, 263 F. Supp. 2d 1326, 1333 (M.D. Ala. 2003); *Bullock v. United Benefit Ins. Co.*, 165 F. Supp. 2d 1255, 1258-59 (M.D. Ala. 2001); *Owens v. Life Ins. Co. of Ga.*, 289 F.Supp.2d 1319, 1327 n.13 (M.D. Ala. 2003)).) This Court has observed—post-*Lowery* but pre- *Pretka* and *Roe*—"that, post-*Lowery*, the amount in controversy

---

[14]     While the defendants' briefing fails to address aggregation and the plaintiffs' complaint is short on specific allegations, the only potential "unified, indivisible interest in some common fund" at issue in this case would be the claims of plaintiffs who own the same parcel of property. Such aggregation, however, does not help the defendants out too terribly much. Instead of showing by a preponderance of the evidence that at least one of nineteen plaintiff's claims independently meet the amount-in-controversy specification, the defendants must show by a preponderance of the evidence that the claims associated with one of sixteen parcels of property independently meet the requisite amount-in-controversy.

cannot be established by a review of jury verdicts in similar cases, including wrongful death cases." *Nelson v. Whirlpool Corp.*, 668 F. Supp. 2d 1368, 1375 & n.11 (S.D. Ala. 2009) (collecting cases and observing that, in that wrongful death case, "[n]o citation to past results, however, is necessary to support the Court's conclusion that the wanton taking of human life puts more than $75,000 in controversy"); *see Lowery*, 483 F.3d at 1215 ("[T]he facts regarding other cases tell us nothing about the value of the claims in this lawsuit. Even were we to look to evidence beyond that contained within the notice of removal, in the present dispute—with a record bereft of detail—we cannot possibly ascertain how similar the current action is to those the defendants cite. Absent specific detail about the present action, the supplement in no way clarifies the aggregate value of the claims here.").

Where the factual record before a court on a motion to remand is wanting, as is this one, this logic from *Lowery* still makes sense in the context of a § 1446(b)(1) removal, under which (in light of *Pretka* and *Roe*) a district court is freer to maneuver and, as such, may now (1) look beyond a plaintiff's representations; (2) make deductions, inferences, and extrapolations that are reasonable; and (3) employ its experience and common sense to determine whether the amount in controversy is facially apparent. *Compare Shiver v. Trudel*, No. 3:11–CV–917–WKW, 2012 WL 1366737, at *3 & n.4 (M.D. Ala. Apr. 19, 2012) ("It is true that judicial experience and common sense need not be cast aside in assessing the amount-in-controversy requirements and that a request for punitive damages must factor into the analysis

of the amount in controversy. However, ***the amount in controversy cannot be measured in a factual vacuum*** . . . ***or absent a factual predicate*** that Plaintiffs are likely to be awarded substantial punitive damages. Because the Complaint is inconclusive on damages, the absence of evidence pertaining to the value of the punitive damages claim precludes Defendants from satisfying their removal burden. . . . Defendants also cite other allegedly similar cases where jury verdicts yielded more than $75,000. However, ***given only a Complaint that is devoid of any factual particulars***, the court cannot possibly ascertain how similar the current action is to those the defendants cite."), *with Castro v. BP Prods. of N. Am., Inc.*, No. 8:11–cv–2188–T–23TBM, 2011 WL 9134010, at *1 (M.D. Fla. Oct. 7, 2011) ("BP Products argues that the complaint advertises a sufficient amount in controversy by alleging an array of harms, notably "loss of an important bodily function," "permanent injury within a reasonable degree of medical probability," "disfigurement," "pain [and] suffering," medical expenses, and loss of earnings. In an otherwise bare complaint—and Castro's complaint is strikingly sparse—a conclusory listing of diverse harms fails to overcome the presumption against federal jurisdiction. Citing six state court verdicts greater than $75,000 in purportedly similar actions, BP Products implies that the amount in controversy in this action is assuredly sufficient. The common theme among the six verdicts and this action is a plaintiff's suffering a burn. (Although the complaint mentions only that Castro suffered an injury because of BP Products's negligence, BP Products elaborates that Castro allegedly suffered a sulfur burn.) Because nothing in the

complaint, the notice of removal, or the record evidences the nature, extent, or *severity* of Castro's supposed burn, BP Products's comparisons amount to unwarrantable speculation.") (citations and quotation marks omitted and emphases added).

The complaint here, which asserts causes of action for trespass; nuisance; negligence/wantonness; and combined and concurring negligence/wantonness, provides in very general terms that

> [f]or some undetermined time period, . . . Defendants have caused or allowed refined fuel products, by-products, waste products, noxious and/or poisonous odors and/or contaminants to be discharged and emitted from [their] fuel refinery facilities into uncontained surface area, waters and the air on and adjacent to the subject lands of the Plaintiffs[,] . . . contaminat[ing] the subject land and air in and near the premises of the Plaintiffs' homes and residence properties.

(Doc. 1, Ex. A., compl., ¶¶ 26, 27, 30.)  As a result, "the Plaintiffs have been damaged by exposure to contamination containing known toxic chemicals and substances; by the mental anguish, pain and suffering experienced by the Plaintiffs; by the devaluation of the subject property; and by the diminishment of and interference with the use and enjoyment of Plaintiffs' homes and property rights." (*Id.*, ¶ 33.)  These general allegations should be compared with facts gleaned from a review of the three "cases in Alabama involving similar claims to support the position that there is more than $75,000 in controversy in the present matter" Killian provides.  (Doc. 1 at 8-9.)—

| Purportedly similar case | Known facts |
|---|---|
| 1.  *Courtaulds Fibers, Inc. v. Long*, 779 So. 2d 198 (Ala. 2000) (per | • Jury returned verdict of $1 million for two plaintiffs on claims of |

| Purportedly similar case | Known facts |
|---|---|
| curiam) | nuisance, trespass, and negligence |
| | • Defendant's plant used CS2, designated by the Federal Government as a hazardous material |
| | • One plaintiff began smelling CS2 in 1987, which caused a burning sensation in his nose and throat |
| | • Exposure to CS2 caused injuries to, and killed two of, the plaintiffs' horses |
| | • Expert testified that value of the plaintiffs' land decreased by approximately $3 million due to known presence of CS2 |
| 2. The reported verdict in *Kirby v. Alexander & Assocs., LLC*, CV-2009-900263 (rendered Feb. 13, 2011 in the Circuit Court of Morgan County, Alabama), *available at* 2011 WL 1560056. | • Jury awarded two plaintiffs $200,000 from two of the defendants (the Childers) |
| | • It was alleged that when the Childers began site preparation on their property, adjacent to the plaintiffs', it caused unnatural water flow onto the plaintiffs' property. |
| | • The subdivision's restrictive covenants addressed drainage within the subdivision, and plaintiffs contended that defendants had a duty to ensure that construction was performed in such a manner as to prevent excessive drainage. |
| 3. *Tyson Foods, Inc. v. Stevens*, 783 So. 2d 804 (Ala. 2000). | • Involved a farm in rural St. Clair County, Alabama, which had a contract with Tyson to operate and maintain a hog farm that at any given time housed approximately 4,800 hogs, adjacent to the plaintiffs' property |
| | • Shortly after the hog farm became operational, the plaintiffs began to |

| Purportedly similar case | Known facts |
|---|---|
| | smell a noxious odor emanating from the Burnett farm and saw waste from the farm flow onto their property and into a creek located on their property.[15] |

Given the lack of a factual record before the Court, the undersigned cannot find that the above cases are sufficiently similar to show by a preponderance of the evidence that the claims of one of the plaintiffs—or the aggregated claims of plaintiffs owning the same parcel of land—are more likely than not above the jurisdictional requirement. To make such a finding, the Court would have to rely on sheer speculation. For example, the Court lacks information regarding (1) the period of time the plaintiffs were—or more to the point, each plaintiff was—allegedly exposed to the products and by-products emitted by the refinery; (2) the exact products and by-products emitted (*i.e.,* were they carcinogenic? are they designated as hazardous materials?); (3) the individual values of the subject properties; (4) the nature of each plaintiff's injuries (*i.e.,* severity? exasperation of underlying medical conditions?); (5) the distance of each subject property from the refinery. Without providing some answers to some of these (and other) questions—but instead offering up verdicts in supposedly similar cases—Killian is asking that the Court operate "in a factual vacuum" and without a sufficient "factual predicate" as to the amount in controversy determination, which is impermissible given the

---

[15]     At trial, the plaintiffs were awarded $75,000 in punitive damages, after receiving only $2,500 in compensatory damages, however, the Alabama Supreme Court, after "[c]onsidering the facts before [it, found] the ratio of 30:1 to be unreasonable" and reduced the punitive damages to $25,000. 783 So. 2d at 810-11.

law in this Circuit. *Shiver*, 2012 WL 1366737, at *3 & n.4; *see, e.g., id.* at *3 n.4 ("[G]iven only a Complaint that is devoid of any factual particulars, the court cannot possibly ascertain how similar the current action is to those the defendants cite."); *Castro*, 2011 WL 9134010, at *1 ("Because nothing in the complaint, the notice of removal, or the record evidences the nature, extent, or severity of [a plaintiff's] supposed burn, [the defendant's] comparisons[, as provided in other cases,] amount to unwarrantable speculation.")

## II.   Conclusion.

Therefore, although Killian's removal of this case pursuant to 28 U.S.C. § 1446(b)(1) was timely, he has not proven by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement as to one plaintiff's claim or even the aggregated claims of plaintiffs owning the same parcel of land.  As such, it is **RECOMMENDED** that the motion to remand (Doc. 10) be **GRANTED** and that this case be **REMANDED** to Marengo County Circuit Court, from whence it came.

## III.   Notice of Right to File Objections.

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. L.R. 72.4.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is

made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 9th day of September, 2013.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**